Mr. Justice Wylie
delivered the opinion of the court:
The petitioner, having made application for a patent in the usual manner, his application was referred, in the first instance, to one of the primary examiners, who made an adverse decision. It was then carried by appeal to the board of examiners-in-chief, by whom a favorable decision was made.
The Commissioner himself, however, was not convinced by the favorable decision and for reasons satisfactory to himself has heretofore withheld the patent.
The first question for the court to determine in the present case is this: Whether, in an ex parte application for a patent-the Commissioner possesses any authority, under the law, to withhold a patent, in opposition to the report of a primary examiner, or the report of the board of examiners-in-chief in its favor j in other words, whether, in such a case, the decision of the primary examiner, if favorable to the patent, is conclusive upon the office, and if unfavorable, and the applicant has carried his case by appeal before the board of ex. aminers-in-chief, and there obtained a favorable decision, this latter decision is conclusive, so that nothing is left to the *103 Commissioner except the ministerial act of countersigning and affixing the seal of the office to the parchment.
The petitioner for this writ claims that, according to the organization of the Patent-Office, the question of the patent-ability of an alleged invention is to be referred for examination first to one of the primary or assistant examiners. If his decision be unfavorable, the applicant has the right to appeal to the examiners-in-chief. If their decision should also be unfavorable, he has the right of appeal to the Commissioner. And, should the Commissioner’s decision be unfavorable, the right of still further appeal to this court. •
In all this the petitioner’s views of the law are correct; but he also claims that, because his application is ex parte, and no one can take the appeal but himself, and nobody will ever 'appeal from a decision in his own favor, the first favorable decision he obtains at any stage of the proceedings must be-conclusive on the office, since the case can go no furthei except by appeal. This view of the law we think is not correct.
The only act of Congress now in force on this subject is the act approved July 8, 1870, entitled “An act to revise, consolidate, and amend the statutes relating to patents and copyrights.”
The first step to be taken by an applicant for a patent is, of course, to file his application.
By the 31st section of the act it is provided—
“That, on the filing of any such application and the payment of the duty required by law, the Commissioner shall cause an examination to be made of the alleged new invention or discovery; and if, on such examination, it shall appear that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important, the Commissioner shall issue a patent therefor.”
By this section it is made the duty of the Commissioner tc cause an examination to be made of the alleged new invention or discovery; but neither in this section nor in any other of the act is he specifically told by what particular officers he is to have the examination made. It is true that he is furnished under the law with a large number of officers, among whom are twenty-two principal examiners, twenty-two first assistant *104 examiners, and twenty-two second assistant examiners, all of whom are appointed by the Secretary of the Interior upon the Commissioner’s nomination.
The duties to be performed by these officers are nowhere defined in the law, but are such only as the Commissioner himself is authorized to prescribe in pursuance of the 19th section, which is in these words:
“That the Commissioner, subject to the approval of the Secretary of the Interior, may, from time to time, establish rules and regulations, not inconsistent with law, for the conduct of proceedings in the Patent-Office.”
All these “principal examiners,” “first assistant examiners,” and “second assistant examiners,” sixty-six in number,, have no functions to perform in the office except only such as may be assigned to them by the Commissioner..
Would it not be a very anomalous condition of things if the Commissioner, under these circumstances, were to have no authority to review and set aside the acts of any of these-subordinate officers ? We shall look into this question a little-more fully after we have examined the law in regard to the examiners-in-chief.
The duties of examiners-in-chief are, in general terms, prescribed in the 10th section, which is in these words—
“Sec. 10. And be it further enacted, That the examiners-in-chief shall be persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the appellant, to revise and determine upon the validity of the adverse decisions of examiners upon applications for patents, and for re-issues of patents, and in interference cases;, and, when required by the Commissioner, they shall hear and. report upon claims for extensions, and perform such other like duties as he may assign them.”
Upon this section especially is it that the relator in the present proceeding relies in his application for a mandamus against the Commissioner. By it the examiners-in-chief are required to be persons of competent legal knowledge and scientific ability, qualifications nowhere expressly required for the Commissioner himself. These officers also, as requii ed by section 2, are appointed by the President, by and with the advice and consent of the Senate. One of their duties is. *105 to “revise and determine upon the validity of the adverse decisions” of the subordinate examiners which may be brought before them by appeal.
Undoubtedly the decision of this board, when in favor of the applicant for a patent, must be conclusive, unless a superior supervisory authority is vested by law in the Commissioner. The same may be said with equal force, also, in respect to the decisions of the inferior examiners in like circumstances; for none but adverse decisions can be appealed at any stage of the examination.
It is provided, also, by the 31st section, that “if, on such examination, it shall appear that theclaimant is justly entitled to a patent under the law, and that the same is sufficiently useful aDd important, the Commissioner shall issue a patent therefor.”
But by the same section it is declared that it is the Commissioner who is to cause the examination to be made. The examination, when made, with its results, is then to be reported to the Commissioner, and if, “ on such examination”— that is, on the face of the examination — “it shall appear,” &c., the Commissioner shall issue the patent. But suppose it should “appear” to the Commissioner, on his own inspection of the report, that the alleged invention is neither novel nor meritorious; he would be bound, in duty, under this section, not to issue the patent. Certainly there is nothing in this section which excludes this superintending authority of the Commissioner.
Had Congress intended that the decision of the examiners, when favorable to the applicant, should be final and conclusive, we would suppose so great an anomaly in executive administration would have been introduced into the law by the use of terms of the clearest import. A certified copy of the decision would have been a mandate to the Commissioner, requiring him to issue the patent by authority, it might be, of a second assistant examiner, who had been appointed at his instance, and subject to removal in the like manner.
By the 7th section it is declared: “That it shall be the duty of the Commissioner, under the direction of the Secretary of the Interior, to perform all the duties respecting the "granting and, issuing of patents, which herein are, or may hereafter he, hy lam *106 directed to be done; and he shall have charge of all books, records, papers, models, machines, and other things belonging to said office.”
If to decide “that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important,” be the office of the examiners, then by this section it is made the duty of the Commissioner to superintend the performance of these duties by the examiners. It is impossible to escape from this conclusion except by denying that these duties are such as respect the issuing and granting of patents. If the decisions of the examiners, when favorable to applicants, leave nothing to be done by the Commissioner but the ministerial act of writing his name at the left-hand corner of the parchments and directing the seal to be affixed, how vain are the words of the law which declare that it shall be his duty “to superintend or perform all the duties respecting the granting and issuing of patents which herein are, or hereafter may be, by law directed to be done.”
By the 23d section it is provided—
“That every patent shall date as of a day not later than six months from the time at which it was passed and allowed.”
By whose authority are patents to be “passed and allowed 1” If they are to be passed by the Commissioner, they are also to be allowed by him. This language is not appropriate to the duties of examiners. These officers neither pass nor allow patents. They examine claims for inventions or discoveries. It is the duty of the Commissioner alone, after the examination has been reported, to say whether the patent shall be allowed and passed.
By the 52d section it is provided as follows:
“That whenever a patent on application is refused, for any reason whatever, either by the Commissioner, or by the supreme court of the District of Columbia upon appeal from the Com - missioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear; and such adjudication, if it be in favor of the right of the applicant, *107 shall authorize the Commissioner to issue such patent, on the applicant filing in the Patent-Office a copy of the adjudication and otherwise complying with the requisitions of law. And, in all cases where there is no opposing party, a copy of the bill shall be served on the Commissioner, and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not.”
Here is an express recognition of power in the Commissioner to refuse the patent, and an ex parte bill in equity given to the applicant as a remedy for such refusal. On the trial, the court is to investigate the merits of the applicant’s claim de novo, and determine the right. What need to provide this mode of investigation if the Commissioner is bound by law in all cases to issue the patent where a favorable decision has been made by the examiners ? Should the decision be against the applicant, he can get no patent, although he may have previously secured favorable decisions from all the examiners in the Patent-Office. On the trial, such decisions would not be received as even prima facie evidence in support of his claim. This section provides for a different class of cases from those which come before the Commissioner by appeal from the examiners under the 47th and 48th sections of the act. In these cases the Commissioner is obliged by law to make his decision, and, if such decision be adverse to the applicant, the latter may appeal to this court, as provided in the 49th and 50th sections of the act.
The case of the present relator was not one of this class. It was not brought before the Commissioner by appeal from any adverse decision of the examiners. It was not brought before him at all, except with the report made by the examiners-in-chief, and he exercised no authority in respect to it, save such as belongs to him in virtue of his general supervisory authority in such a case. He simply withholds the patent for reasons which he does not give, but makes no decision. It is not a case, therefore, which could be brought into this court by appeal; but it is a case for which the applicant may have the remedy given by the 52d section, and that is alone sufficient, without respect to any other question, why the application for a mandamus in this case should be denied.
*108 In that this section recognizes the authority of the Commisióner to withhold a patent in any case, for any reason satisfactory to himself, it shows that the decisions of the ex-aminors are in no case obligatory as to his action. In that it supplies a remedy under which his judgment in withholding' the patent may be revised, it is decisive against the remedy by mandamus applied for in the present instance; for this writ will not lie where the law furnishes the party with any other adequate specific remedy. See Kendell vs. The United States, 12 Peters, 614.